GEARY NEWBURN v. B. A. DURHAM ET AL.

No. 781.

1. **False Imprisonment—Pleading—Mitigation of Damages.**—In an action for false imprisonment, where circumstances of aggravation are charged and exemplary damages are claimed, matters showing an excuse, not available as a defense, may be pleaded and shown in rebuttal of such circumstances of aggravation under proper explanation by the court to the jury of the purpose of the evidence.

2. **Alteration of Warrant—Arrest Without Warrant—Statute Construed—Article 229, Code of Criminal Procedure—Measure of Damages.**—A robbery was committed nearly fifty days before the arrest, and the day before the arrest the plaintiff was pointed out to the defendant as one of the guilty parties, and he, mistaking the name of the plaintiff, procured a warrant for his arrest, and then discovering his mistake, instead of procuring a warrant for the plaintiff, describing him by his christian name, he attempted to cure the defect by erasure and inserting the true name of the plaintiff. *Held*, that the alteration rendered the warrant void; that the provisions of article 229, Code of Criminal Procedure, was inapplicable to such case, and the defendant could not be heard to say that he had no time to procure a warrant; that the plaintiff should recover damages against the defendant, and that the measure of damages is the value of time lost, injury to business, and the suffering, bodily and mental, occasioned by the arrest.

3. **Powers of City Marshal—Statute Construed.**—A city marshal of a town incorporated under the general laws of the State, under the circumstances specified in article 229 of the Code of Criminal Procedure, may lawfully arrest one beyond the limits of the town for a felony committed within the county and not within the town.

4. **City Marshal's Bond—Liability of Sureties.**—The sureties on the official bond of a city marshal are liable for an illegal arrest made by the marshal.

APPEAL from Anderson. Tried below before Hon. A. B. WATKINS.

*Thomas B. Greenwood & Son*, for appellant.

*J. R. Burnett*, for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant brought suit against appellees for the recovery of damages for the alleged false imprisonment of appellant by appellee Durham. Durham was the marshal of the town of Palestine, Texas, and the other appellees were the sureties upon his official bond. The trial resulted in a verdict and judgment for the defendants, and the plaintiff appeals to this court. The record discloses the following facts: Early in the month of July, 1893, a robbery was committed on a passenger train of the International & Great Northern Railway Company in the county of Anderson, between the two towns of Palestine and Nechesville, and near to the latter town; and on the 23rd day of August, 1893, the appellee Durham made complaint against "Arch" Newburn and Jim and Sam Shields, charging them jointly with train robbery; and upon said complaint, J. F. Watts, a justice of the peace for the county of Anderson, issued a warrant for the arrest of the accused. This warrant was issued on the same day the complaint was made, and was directed to the sheriff of Anderson

County, or any constable thereof, or to B. A. Durham, marshal of the city of Palestine; and on the same day Durham arrested the appellant and one of the other parties named in the warrant, while they were at work in a brick yard in the town of Nechesville, and carried them through the town to the depot of the International & Great Northern Railway, and upon the arrival of the train for Palestine they were taken by rail to the depot in Palestine, and were taken thence through the streets of the town to the county jail, and there turned over to the sheriff of the county, and by him kept not in jail, but in his dwelling house, until the next morning, when they were brought before justice Watts, and the examination was postponed to a future day, and the appellant gave bond for his appearance, without objection to the postponement of the examination, or without making exception to the warrant of arrest, so far as appears from the record. The arrest was made in the afternoon, and it was after nightfall when the officer and his prisoners reached Palestine.

Jim and Sam Shields were sons of J. A. Shields, who was the justice of the peace for the precinct which includes the town of Nechesville, and he was the owner of the brick yard where the arrest was made, and the appellant was in his employment and boarded in his family at the time he was arrested; but appellant did not board with him, nor was he in his employment, at the time of the robbery. The train was robbed on the night of the 6th of July, a mile and a half from Nechesville; and on the morning after, at or near the scene of the crime, pieces of money and torn money packages, lottery tickets, and an envelope with Jim Shields' name on it, were found; and at a distance of three-quarters of a mile from the robbery foot tracks were discovered, which were followed near to the corner of J. A. Shields' field, and but a short distance from his house, and at this point other lottery tickets were found; and upon these facts a search warrant was issued, and Shields' premises were searched on the 7th of July, but without discovering anything to implicate the Shields brothers in the crime with which they were charged by Durham.

Shortly after the robbery, a mulatto, who seems to have been a stranger in the county, was found under the depot at the town of Nechesville, and he was arrested upon suspicion merely, it would seem, and imprisoned in the county jail for some two weeks, when he was discharged; and at the time of the trial of this cause he had disappeared, and his whereabouts was unknown. This man, who in the record is called "Kid Henry," informed the appellee Durham that he was on the train at the time of the robbery; that he was "stealing a ride," and that he would recognize the robbers if he could see them; that the men were masked when they committed the robbery. He also told Durham that three men got on the train at Nechesville, and that they came from towards a gin house, where they had been under a tree. On the morning of the 7th, the day after the robbery, foot tracks were found leading from a tree near the gin referred to by Henry, towards the track

of the railway.   The day before the arrest of the appellant, Kid Henry was taken by appellee Durham to Nechesville, and before reaching the town Durham instructed Henry to separate from him, and to go into the town and see if he could discover any of the robbers, and Durham himself went to Shields' brick yard, where, among others at work, were appellant and Sam Shields.   While there, Durham observed Henry to come up through the woods to the yard, and to engage in conversation with appellant and Sam Shields; and afterwards Henry told Durham that appellant and Sam Shields were two of the robbers; that he recognized both of them as two of the men who committed the robbery on the 6th of July.   On the 23rd of August, some time before he made the arrest of appellant, Durham learned from a resident merchant of Nechesville that appellant's name was not "Arch" but "Geary" Newburn, and upon receiving this information, Durham erased the name of "Arch" from the warrant of arrest, and in lieu thereof inserted the christian name of appellant.

The defendant Durham answered the petition, admitting that he made the arrest, but denied that he did so unlawfully or wrongfully. He averred, that at the time of the arrest he was marshal of the town; and in addition to the facts which we herein stated, he alleged, that at the time he made complaint to the justice he was not certain as to the christian name of the plaintiff, but from inquiries he had made he believed it to be "Arch;" that he stated the facts to the county attorney and the justice of the peace, and the complaint was drawn by the county attorney, and defendant was instructed by that officer and the justice to arrest the Newburn who had been pointed out by Henry; that said warrant was directed to the sheriff of Anderson County, or to any constable thereof, or to B. A. Durham, city marshal of Palestine; that before defendant made the arrest, he ascertained that the true name of plaintiff was Geary, and that defendant, believing he had the right to do so, erased the name "Arch" from the warrant and inserted in lieu thereof plaintiff's true name, and that he made the arrest on this warrant; and that he had good reason to believe, and did believe, that the plaintiff was guilty of the robbery, and that he was about to escape; and that defendant did not have time to procure a warrant with the plaintiff's name inserted by the justice who issued the warrant; that the arrest was made at Nechesville, distant about twelve miles from Palestine; that the justice of the peace for the Nechesville precinct was J. A. Shields, the father of the parties jointly charged with plaintiff in the warrant, and that no other magistrate than this justice was nearer to Nechesville than justice Watts; that defendant was accompanied by the sheriff of the county from Palestine, and that that officer was present when the arrest was made, and that plaintiff voluntarily surrendered to him.

The other defendants excepted to the plaintiff's petition, for the reason that it showed no cause of action against them, and that the facts alleged did not make them liable for the alleged trespass of the

defendant Durham; and if their demurrer should be overruled, for answer they denied all and singular the averments of the petition.

The plaintiff filed general and special exceptions to the answer of the defendant Durham. These demurrers by plaintiff, as well as the demurrer of the defendants, the sureties of the defendant Durham, were overruled by the court; and both plaintiff and said defendants excepted to the action of the court in overruling their respective demurrers, and have each assigned same as error.

We are of the opinion that the answer of the defendant Durham avers nothing in justification of the arrest of plaintiff, and presents no bar to plaintiff's action; and unless the facts averred in the answer are admissible in mitigation of defendant's conduct, the general and the first special exception to the answer should have been sustained.

Any unlawful detention of a citizen, by either an officer of the law or a private person constitutes false imprisonment, no matter what may have been the motive or purpose of the party so detaining the other, and for such imprisonment the party injured should have his damages; and ordinarily, where only actual damages are sought to be recovered, evidence in mitigation is not admissible. But in this case the plaintiff, while not praying for exemplary damages, makes a case, by the averments of his petition, which would authorize a recovery for such damages. The mental suffering consequent upon an unlawful arrest must in a great degree depend upon the manner in which the arrest is made and the attendant circumstances. If there be no excuse whatever for the arrest, and if it be effected with violence and rudeness of language or manner, the injury to the feelings must be much greater than when the arrest is made without any such circumstances of aggravation.

The petition does not simply charge that the plaintiff was unlawfully arrested and deprived of his liberty by the defendant; but it avers that the defendant, "with force and arms, and without any authority of law, and without any reasonable or probable cause whatsoever, and without any legal warrant of arrest, did unlawfully, oppressively, willfully, wickedly, and without plaintiff's consent, assault plaintiff." In rebuttal of these charges of aggravation, we think the defendant should be permitted, under proper explanation by the court to the jury as to the purpose of the evidence, to prove facts set up in his answer; and that the court did not err in overruling plaintiff's general and first special exceptions to the answer. From the conclusions we have reached as to the law of the case, it is not necessary to determine the question presented by the plaintiff's second special exception. The appellant's exception to the charge of the court must be sustained. The court, in substance, tells the jury in one part of its charge, that if the facts and circumstances which had come to the knowledge of the defendant Durham were such as would have given a reasonably prudent man and officer just grounds for suspecting and believing that plaintiff was guilty of the crime of rob-

bery, and that he would probably make his escape if not immediately apprehended, the defendant was authorized to arrest the plaintiff without a warrant, and if he did so in good faith, the jury should find for the defendant. This is not the law of this State. The citizens of this country hold their liberty and the freedom of their persons from unlawful seizure by no such precarious tenure. The exemption of the citizen from illegal arrest can not be destroyed upon the suspicion of any peace officer, whatever may be his rank, or however laudable may be his motive. Personal liberty is an absolute right inherent in every man; and the primary and chief object of the law is to protect and preserve that right, and he who invades it can only do so with impunity by express authority from the law. Article 229 of the Code of Criminal Procedure provides as follows: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the person accused." Under this article the defendant sought to justify his arrest of the plaintiff; and the jury were told by the charge of the court, that if the evidence showed a felony had been committed, and it was represented to defendant Durham by a credible person that plaintiff was guilty of the offense, and was about to escape, so that there was no time to procure a warrant, the defendant was authorized to arrest the plaintiff without warrant. This charge should not have been given. There was not evidence before the court to justify him in submitting such an issue to the jury. The defendant was informed by no one, credible or incredible, that the plaintiff was about to escape. The robbery was committed nearly fifty days before the arrest, and the day before the arrest, plaintiff was pointed out to defendant by Henry as one of the robbers; and he, mistaking the name of the plaintiff, sought and procured a warrant for his arrest, under the name of another, and when he discovers his mistake, instead of procuring a warrant for the plaintiff properly describing him by his christian name, he attempted to cure the defect in the warrant which had been delivered to him by Justice Watts. Under such circumstances, the defendant can not be heard to say he had not time to procure a warrant. Article 229 has no application to the facts of this case, and the warrant being void as to plaintiff, plaintiff is unquestionably entitled to recover of the defendant his damages; and the measure of the damages, is the value of the time lost, injury to his business, and the suffering, bodily and mental, which the arrest may have occasioned to plaintiff.

The cross-assignments by the sureties of the defendant Durham raise the question as to the power and authority of defendant Durham to assume and exercise the functions of a peace officer beyond the corporate limits of the town of Palestine. The petition alleges that the arrest

was made some ten or twelve miles from Palestine, and was made by defendant in his official capacity; and it is strenuously insisted by counsel for appellee, that several articles of the Civil Statutes and of the Code of Criminal Procedure authorize the marshal of a town to exercise the functions of his office beyond the territorial limits of his town; and articles 363 and 418 of the Revised Statutes are specially relied on as clothing such officer with extra-territorial powers; but after careful consideration of the articles cited, we are constrained to dissent from the learned counsel, and to hold that a marshal can not exercise the functions of his office beyond the corporate limits of his town, except when specifically and expressly directed so to do by the statute. He may go beyond the town to execute the judgments and orders of the municipal courts, and in the execution of criminal process issued by the mayor or other authorized officer of the town for the arrest of offenders against the law, when the offense is committed within the town. These are the only instances that we know of in which this officer can exercise the powers of his office outside the limits of his town. The law provides for the election of a marshal of every incorporated town and every city in the State, and defines his powers; and these powers, within the town, are similar to the powers conferred upon the sheriff of the county; and both of these officers are declared by the law to be peace officers. But the marshal is no more authorized to exercise the powers of a peace officer beyond his town than is the sheriff of one county authorized to exercise such powers in another county.

It follows from these views of the law, that the sureties upon the official bond of the defendant Durham are not liable to the plaintiff for the injury sustained by him through the illegal and unauthorized act of defendant Durham, committed ten miles beyond the limits of the city of Palestine; and the majority of this court holds that no recovery can be had by plaintiff against the sureties upon the official bond of the defendant Durham; but in this conclusion, the writer does not concur. In his opinion, when the appellant was taken from the train, after it reached Palestine, by the marshal, and compelled to go through the city against his will to the county jail, the marshal, by such act, was guilty of false imprisonment, and his sureties may be held liable in damages to the plaintiff for the injuries resulting to him from this abuse by the marshal of the powers of his office. The court is further of the opinion that the plaintiff's petition is defective in not properly averring a breach of the marshal's bond; and the special exception to it on this ground should have been sustained, as well as the other exception made by the sureties, which we have already considered. Upon another trial the plaintiff will have the privilege of the testimony of the sheriff, and it is not necessary to consider the assignment touching the refusal of the court to grant a new trial because of the absence of this officer from the county at the trial, and the conse-

quent denial to plaintiff of the benefit of his testimony. We will not notice other assignments.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 21, 1895.

### ON MOTION FOR REHEARING.

PLEASANTS, ASSOCIATE JUSTICE.—Since this motion was filed, this court in this cause certified to the Supreme Court these questions:

"1. Can the marshal of a town incorporated under the general laws of this State, by virtue of his office, under the circumstances specified in article 229 of the Code of Criminal Procedure, lawfully arrest one beyond the limits of the town for a felony committed within the county, but not within the town? Or in other words, can the marshal of such town exercise the powers conferred in said article upon a peace officer beyond the limits of his town, save when the arrest is made for a felony committed within the corporate limits of the town?

"2. If a marshal of such town, without authority of law, arrest a person several miles beyond the limits of his town, the arrest being made upon a charge of felony committed within the county, but several miles from the town, and the person so illegally arrested be taken against his will by his captor within the town, and by him be there illegally restrained of his liberty for a short time, are the sureties of the marshal made liable jointly with him in damages to the party so wrongfully deprived of his liberty, by the fact that the false imprisonment, which commenced beyond the limits of the town, was by the marshal, under color of his office, continued for a short while within the town?"

And that court, in response thereto, made answer as follows:

"Independent of statute, the authority or jurisdiction of the marshal would not extend beyond the city limits. 3 Harr. (Del.), 416.

"The question then is, have the statutes of this State extended the authority of the marshal, in the matter of making arrests, beyond the city limits?

"Article 229, Code of Criminal Procedure, provides, that 'Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the person accused.'

"Article 44, Code of Criminal Procedure, is as follows: 'The following are peace officers: the sheriff and his deputies, constable, the marshal, constable, or policeman of an incorporated town or city, and any private person specially appointed to execute criminal process.'

"Article 363 of the Revised Statutes, after defining the power of the marshal as to city matters, provides, that 'in the prevention and sup-

pression of crime and arrest of offenders he shall have, possess, and execute like power, authority, and jurisdiction as the sheriff of a county under the laws of the State.'

"The first two statutes above quoted confer upon the marshal power to arrest in the particular case without warrant, but do not expressly authorize such arrest beyond the city limits. The implication to that effect is, however, strong, for he is placed in the same class with other officers whose jurisdiction in making such arrests undoubtedly extends to the limits of the county, without any intimation that the authority conferred upon him was intended to be more circumscribed as to territory than that of other members of his class.

"However this may be, we are of the opinion that the language quoted from article 363 above was intended, 'in the prevention and suppression of crime and arrest of offenders' under the State law, to confer upon the marshal the 'power, authority, and jurisdiction' of a sheriff.

"Thus again we are directed by the Legislature to look solely to the sheriff's 'power, authority, and jurisdiction' in order to determine that of the marshal in making arrests of offenders against the State law, without any intimation that the 'power, authority, or jurisdiction' of the latter was to be more circumscribed than that of the former.

"Power and authority as applied to executive officers seem to be convertible terms, for the authority of such officers is their lawful power; but we understand the word 'jurisdiction,' as here used, to refer to the territory in which such power or authority can be exercised.

"Since the jurisdiction of the marshal is measured by that of the sheriff in the prevention and suppression of crime and arrest of offenders against the laws of the State, it must be coextensive with the limits of the county.

"The purpose of the Legislature to extend the jurisdiction of the marshal beyond the limits of the town, and make it coextensive with that of the sheriff in the matter of arrests, is further evidenced by the fact that a 'warrant of arrest' may be directed to him, and such warrant he may execute anywhere in the county (Code of Criminal Procedure, articles 42, 44, 45, 232, 238, 897, 898); whereas all civil process, unless otherwise specially provided by law, must be directed to the 'sheriff or any constable.' Rev. Stats., art. 1443.

"It results that both interrogatories, in the first question propounded, must be answered in the affirmative.

"We understand that an answer to the second question was desired only in the event the first was answered in the negative, and therefore we make no answer thereto."

The motion for rehearing will be refused; but our opinion, delivered at the time of the decision herein, is modified so far as the same conflicts with the opinion of the Supreme Court, copied herein, and upon another trial this cause will be tried in accordance with the law as an-

nounced in our said opinion, with the exception, that if the jury con-clude from the evidence that plaintiff should recover of the defendant Durham, they must return a verdict against both him and his sureties, jointly sued with him.

*Motion refused.*

Delivered June 20, 1895.