Troy Lee DOUTHIT, Plaintiff-Appellant,

v.

Clarence JONES, Sheriff, Dallas County, Texas, and W. H. McCallum, Defendants-Appellees.

No. 78–1036.

United States Court of Appeals, Fifth Circuit.

June 20, 1980.

528

Linda L. Addison, Houston, Tex. (Court-appointed), for plaintiff-appellant.

John B. Tolle, Sue L. Lagarde, Asst. Dist. Attys., Dallas, Tex., for defendants-appellees.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Troy Lee Douthit brought this action against Clarence Jones, a former sheriff of Dallas County, Texas, and W. H. McCallum, a deputy sheriff of Dallas County, seeking damages for his allegedly wrongful incarceration by the defendants under 42 U.S.C. §§ 1983, 1988 and the Texas common law tort of false imprisonment. The district court granted judgment to Jones and McCallum on the basis of the jury's finding that they had acted on a reasonable good faith belief that they had lawful authority to imprison Douthit. On this appeal, Douthit urges that the judgment must be reversed because of improper selection of the jury, bias on the part of the trial judge, ineffective assistance of counsel, perjury and suppression of evidence by the defendants, and the submission to the jury of the good faith, qualified immunity defense without adequate evidentiary support. We conclude that Jones and McCallum did not present sufficient evidence to be entitled to qualified immunity from § 1983 liability and that under Texas common law a party may not assert a good faith defense to a false imprisonment action, and therefore reverse.

## I. Facts

The series of events out of which this action arises originated in September, 1968, when the Dallas County Criminal Court issued a capias in case number 68–2591–C authorizing Douthit's arrest on a misde-

meanor charge of passing a worthless check. The return on the capias indicates that the Dallas County sheriff's office arrested Douthit in early December, 1969. Douthit posted bond and was released. For some unexplained reason, Douthit was not tried on the worthless check charge until October, 1972.

In May, 1971, the district attorney of Dallas County filed an information charging Douthit with the misdemeanor offense of possession of a dangerous drug, and the Dallas County Criminal Court issued a capias for his arrest. The Dallas County sheriff's department arrested Douthit on that charge, case number 71–85–C, in July, 1970, but released him when he posted bond. Douthit apparently failed to appear on September 14, 1972, to enter a plea. His bond was forfeited and the Criminal Court issued an alias capias for his arrest. The sheriff's office executed the capias by arresting Douthit on September 18, 1972. While Douthit was in jail, the sheriff's department served upon him a capias issued on the pending 1968 worthless check charge.

On October 12, 1972, Douthit pled guilty to both the check and drug charges, and Judge Stinson of the Dallas County Criminal Court ordered him to serve concurrent sentences of ninety days in jail on each charge, commencing September 18, 1972, and to pay all court costs. According to the clerk's records, Douthit was assessed $68.00 in costs in case number 68–2591–C and $58.00 in number 71–85–C. In 1972 the practice of the Dallas County sheriff was to award five days "good time" for every thirty days served by a prisoner. Thus, a prisoner sentenced to serve ninety days could complete his sentence in seventy-five days. Douthit served seventy-nine days, from September 18 to December 5, 1972, and accumulated fifteen days of good time credit. Under Texas law, if a defendant defaults in the payment of the cost judgment, the court may order him to be imprisoned until the judgment is discharged at the statutory rate of $5.00 per day. Tex.Code Crim.Proc.Ann. arts. 43.03, .09. On December 5, 1972, Douthit filed a pauper's oath with the county criminal court, asserting that he was indigent. The court ordered his release from jail and allowed him until March 1, 1973, to pay the costs assessed against him. The extra four days Douthit served should have reduced the costs he owed by $20.00 at the statutory rate of $5.00 per day. Apparently Douthit did not receive credit for this additional time he was incarcerated beyond the period of his sentence.

Douthit did not pay his remaining costs by March 1, 1973, as ordered by the county criminal court, but he was not rearrested upon this default. On October 19, 1973, the Dallas County sheriff's department arrested Douthit on a capias, issued in case number 73–5457, charging him with the misdemeanor offense of operating a car without a driver's license. Douthit pled guilty to the charge on October 23, 1973, and the county criminal court sentenced him to seventy-two hours in jail and assessed him $48.00 in costs. With credit for the period he had been incarcerated since his arrest, Douthit had already served his three-day sentence at the time he pled guilty. Since he had not paid the court costs, however, the sheriff's department held him until October 31, 1973, an additional ten days, to satisfy the $48.00 in court costs at the statutory rate of $5.00 per day. The commitment order issued by the clerk of the Dallas County Criminal Court in case number 73–5457 authorized this confinement until October 31, 1973. However, the sheriff's department did not release him from its custody until November 30, 1973.

Jones, who was sheriff of Dallas County during this period, and McCallum, who was a deputy sheriff and was in charge of the admission and release of prisoners, contend that the sheriff's office continued to imprison Douthit until he discharged the costs judgments on which he had defaulted in the two prior misdemeanor actions, case numbers 68–2591–C and 71–85–C. The only documents they introduced that purported to authorize Douthit's continued confinement were two commitments that the clerk of the Dallas County Criminal Courts had dated November 30, 1973, not the date of

commitment but the date of Douthit's ultimate release. One commitment authorized his imprisonment for the unpaid costs of $68.00 assessed against him in case number 71–85–C, and the sheriff's return indicates that Douthit discharged those costs by serving from November 1 to November 15. The other commitment listed costs of $76.00 as being owed in case number 68–2581–C, and the sheriff's return states that Douthit was held from November 15 until his release on November 30 to satisfy those costs.

Douthit subsequently initiated this action against Sheriff Jones and Deputy Sheriff McCallum, asserting that their continued confinement of him during November, 1973, without a valid judicial commitment was an actionable wrong under 42 U.S.C. §§ 1983, 1988, and constituted the Texas common law tort of false imprisonment. Jones and McCallum defended on the ground that they believed in good faith based upon reasonable grounds that they had the authority to imprison Douthit to satisfy the court costs that he admittedly owed in cases 68–2591–C and 71–85–C. They introduced into evidence the two November 30, 1973, commitments and records kept by the Dallas County jail on its prisoners, which Deputy McCallum testified contained information concerning Douthit's unpaid court costs in the two prior misdemeanor actions that could only have been obtained from a commitment. Both defendants surmised that either the November 30th dates on the commitments were typographical errors or another commitment had existed that was now missing from the clerk of court's records.

The trial court instructed the jury on the good faith, qualified immunity defense accorded to executive officers sued under § 1983, but it did not distinguish in its instructions between Douthit's Texas common law false imprisonment claim and his § 1983 claim. The jury returned a verdict in favor of Sheriff Jones and Deputy McCallum based upon a specific finding that they had acted in reasonable good faith in incarcerating Douthit, and the district court entered a judgment in their favor.

On this appeal Douthit contends that the judgment rendered against him should be reversed on several grounds. He argues that the manner in which the jury was impaneled operated to exclude poor persons, blacks, and Mexicans; that the trial judge exhibited bias against him; that he received ineffective assistance from his appointed counsel; that the defendants committed perjury and deliberately suppressed evidence; that good faith is not a defense to a claim of false imprisonment under Texas law; that the evidence presented by the defendants did not justify presenting the good faith, qualified immunity defense to the jury; and that the trial judge improperly allowed the defendants to introduce evidence of his past and present criminal record.

## II. The Qualified Immunity Defense to the § 1983 Claim

Douthit contends that the trial court erred in submitting to the jury the question of whether Jones and McCallum had a reasonable good faith belief that they were acting under lawful authority in imprisoning him. He urges that in a § 1983 action predicated upon false imprisonment, a defendant jailer is entitled to qualified immunity only if he demonstrates either that the plaintiff's confinement resulted from an error made outside the realm of his control or knowledge, or that he lawfully incarcerated the plaintiff on the basis of a facially valid legal order. Douthit argues that Jones and McCallum failed to present sufficient evidence of their reasonable good faith to warrant the district court's instruction to the jury on the qualified immunity defense since they did not introduce a facially valid commitment order or capias pro fine authorizing his imprisonment for the unpaid court costs. The defendants respond that the district court's instruction on the qualified immunity defense was correct and proper under the decision of this court in *Bryan v. Jones*, 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976).

A. Prima Facie Showing of a Violation of § 1983.

■■■ 42 U.S.C. § 1983 imposes civil liability upon any individual ·

who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

The Supreme Court has stated that § 1983 must be construed against a background of common law tort principles, including not only the elements of tort liability but also the defenses to liability. *See Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1212, 1218–19, 18 L.Ed.2d 288, 295–96 (1967); *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961). The elements of a common law false imprisonment cause of action are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Bryan v. Jones*, 530 F.2d at 1213; *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); Restatement Second of Torts § 35 (1965). To establish a cause of action under § 1983, however, a party must also show that the defendant, while acting under color of law, deprived him of a right "secured by the Constitution and laws" of the United States, which requires in the context of this case that Douthit show that the defendant sheriff and deputy sheriff imprisoned him in violation of his fourteenth amendment due process rights. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57, 98 S.Ct. 1729, 1733–34, 56 L.Ed.2d 185, 192–94 (1978); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Baker* the Court held that the detention of an individual for three days on the basis of a valid arrest warrant despite his protestations of innocence did not amount to a deprivation of liberty without due process. *Baker v. McCollan*, 443 U.S. at 143–45, 99 S.Ct. at 2694–95. This case presents a substantially different factual context from *Baker* since Douthit has alleged that the defendants imprisoned him for thirty days beyond the sentence imposed upon him without a valid commitment order. Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process. Thus, Douthit asserted a prima facie violation of § 1983 by alleging that the defendants, acting under the authority granted to them by Texas law, deliberately confined him without a valid commitment order between November 1, 1973, and November 30, 1973, against his will and over his objections.

B. The Qualified Immunity Defense.

In response to Douthit's allegations, Jones and McCallum asserted that they were entitled to qualified immunity from liability under § 1983 based upon their reasonable, good faith belief that they possessed valid legal authority to incarcerate Douthit for the period in question. They rely primarily upon *Bryan v. Jones*, 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), a prior false imprisonment action under § 1983 against Sheriff Jones, in which the court held that a jailer has an official immunity defense to liability under § 1983 for false imprisonment if he acted on the basis of a reasonable, good faith belief that the detention was lawful. This ruling was subsequently reinforced by the Supreme Court's pronouncement in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), that prison officials, while not absolutely immune from liability for damages under § 1983, were entitled to the qualified immunity that the Court had previously accorded to other officers of the executive branch of government in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). This qualified immunity doctrine, which the Supreme Court predicated upon the immunity accorded to executive officers

in common law tort actions, protects such officials from liability for acts performed in the course of carrying out their duties. The Court justified the grant of immunity upon the grounds that to impose liability upon an executive officer who in good faith exercises his discretion pursuant to the legal obligations of his position would be unjust and that the threat of such liability might deter the officer from executing his office with the decisiveness and judgment necessary to protect the public good. *Scheuer v. Rhodes*, 416 U.S. at 240, 94 S.Ct. at 1688; *Cruz v. Beto*, 603 F.2d 1178, 1182 (5th Cir. 1979). Against these rationales the Court balanced the policy underlying § 1983 of protecting individuals from deprivations of their individual constitutional rights caused by an official's abuse of his position, and it refused to accord an absolute immunity to executive officers, granting instead only a qualified immunity to officials who act on the basis of an objective and subjective good faith belief that their actions are lawful.

■ The qualified immunity doctrine does not, however, protect an official whose actions, regardless of his intent, contravene "settled, undisputable law." *Wood v. Strickland*, 420 U.S. at 321, 95 S.Ct. at 1000; *Cruz v. Beto*, 603 F.2d at 1183; *Bogard v. Cook*, 586 F.2d 399, 411 (5th Cir. 1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Thus the immunity defense is not available to officials

if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

*Procunier v. Navarette*, 434 U.S. at 562, 98 S.Ct. at 860; *Cruz v. Beto*, 603 F.2d at 1183. Nor does the immunity doctrine protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. *Procunier v. Navarette*, 434 U.S. at 566, 98 S.Ct. at 862; *Cruz v. Beto*, 603 F.2d at 1183; *Bogard v. Cook*, 586 F.2d at 411. A party seeking to avoid a qualified

immunity defense on the basis of the official's subjective intent, however, must show more than mere negligence; he must prove "that [the] official either actually intended to do harm to [him], or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result." *Id.* at 412.

C. Burden of Proof.

■ The good faith, qualified immunity defense is an affirmative defense, and the burden of showing its applicability rests on the defendant officials. On this appeal we must determine the nature of the showing that must be made by Sheriff Jones and Deputy Sheriff McCallum to warrant submission of the qualified immunity issue to the jury.

■■ The perimeters of a § 1983 action for false imprisonment must be determined against a background of common law tort principles, including those principles relating both to liability and to available defenses. *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128, 136 (1976); *Pierson v. Ray*, 386 U.S. at 556–57, 87 S.Ct. at 1218–19. At common law a policeman against whom a false imprisonment action was alleged was entitled to immunity if he could demonstrate that he acted in good faith. The defendant police officer bore the burden of justifying the arrest that resulted in the false imprisonment charge by showing that he had reasonable grounds to believe that a crime had been committed. *Cruz v. Beto*, 603 F.2d at 1183; *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir. 1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339 (2d Cir. 1972), on remand from 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Most of the other circuits deciding the issue have extended the burden of proof rule applicable to common law false arrest and false imprisonment actions to all actions in which a qualified immunity defense is asserted. *Compare Dellums v. Powell*, 566 F.2d 167 (D.C.Cir. 1977), cert. denied, 438 U.S. 916, 98

S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53 (3rd Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976); *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *McLallen v. Henderson*, 492 F.2d 1298 (8th Cir. 1974); *Jones v. Perrigan*, 459 F.2d 81 (6th Cir. 1972); *and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339 (2nd Cir. 1972), on remand from 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *with Gaffney v. Silk*, 488 F.2d 1248 (1st Cir. 1973).

In *Cruz v. Beto*, 603 F.2d 1178 (5th Cir. 1979), this court addressed the burden of proof issue. After tracing the development of the qualified immunity defense by the Supreme Court and examining its underlying policies, this court held in *Cruz* that the director of the Texas Department of Corrections had established his qualified immunity in a § 1983 action challenging some of his administrative decisions by showing that he had acted "in the regular course of discharging his official duties," and that such a showing sufficed to shift to the plaintiffs the burden of proving that the director had not acted in legal good faith. While noting the burden of proof rule applicable to common law false arrest actions in which a policeman sought to defend on the ground that he acted in good faith, the court in *Cruz* distinguished the qualified immunity available to a prison director from that available at common law to a policeman on the basis of the much greater discretion exercised by prison administrators, who have a broad range of duties and authority. The court did not reject the burden of proof rule applicable in common law false arrest and imprisonment actions, but merely distinguished such actions against officials with limited discretion from the situation it addressed by stating:

> . . . if the doctrine of qualified immunity is to have a real meaning, some distinction must be drawn between the defense accorded the policeman in a suit for false imprisonment at common law

and the director of a statewide prison system in an action to impose damages based on his exercise of executive management discretion.

*Id.* at 1184.

Thus, the showing that a defendant official must make to avail himself of the qualified immunity defense varies depending upon the degree of discretion that he exercises in performing his official duties. Such a result is consistent with the policies underlying § 1983 and the qualified immunity doctrine as delineated by the Supreme Court. The purpose of § 1983 is to provide persons deprived of their constitutional rights by unlawful official actions with a remedy, while the qualified immunity defense protects the public's interest in enforcement of the laws by ensuring that the threat of liability will not deter an executive official from exercising his discretion and performing his official duties. *Butz v. Economou*, 438 U.S. 478, 503, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895, 913 (1978); *Scheuer v. Rhodes*, 416 U.S. at 244, 94 S.Ct. at 1690.

When a plaintiff seeks damages under § 1983 for a discretionary action by an official such as a prison administrator, who must exercise an exceedingly broad range of discretion in performing his official duties, the official should be entitled to qualified immunity upon a showing that he acted within the scope of his discretionary authority. The burden would then be upon the plaintiff to show either that a subjective, bad faith intent to harm him motivated the official or that the official knew or should have known that his action infringed a clearly established constitutional right of the plaintiff. An official such as a police officer, whose discretion is limited, however, must demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted. Imposing a greater burden of proof on officials of limited discretion provides greater protection to the public

and is consistent with the common law burden of proof rule with respect to official immunity. It should not deter such an official from exercising his discretion since the lawful bounds of his limited discretionary authority are more clearly defined than those of an official whose duties require him to exercise broad discretion.

**D. Sufficiency of the Proof Submitted by Jones and McCallum.**

■ Turning our attention to the case before us on this appeal, we conclude that the discretion that a jailer may lawfully exercise in imprisoning an individual is more limited in scope than even the discretion that a policeman may exercise in effectuating an arrest, much less the discretion accorded to a prison administrator in managing the prison. *See Bryan v. Jones,* 530 F.2d at 1214–15; *Whirl v. Kern,* 407 F.2d at 790–92.

In *Whirl v. Kern,* the court distinguished between the action of the sheriff in incarcerating an individual and the actions of a policeman determining whether to make an arrest by stating:

> An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation. . . . As a result, constabulary latitudinarianism is important, and peace officers are and must be endowed with privileges not accorded to ordinary citizens. . . .
>
> . . . . .
>
> . . . A jailer, unlike a policeman, acts at his leisure. He is not subject to the stresses and split second decisions of an arresting officer, and his acts in discharging a prisoner are purely ministerial. Moreover, unlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, . . . he is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.

*Id.* at 790–91, 792. While rejecting the holding of *Kern* that a jailer could not assert a good faith defense in a false imprisonment action under § 1983, the en banc court in *Bryan v. Jones,* 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), concluded that the standard of reasonableness by which the availability of qualified immunity to an official would be gauged varied according to the degree of discretion that he exercised. Where a plaintiff alleges that he was imprisoned without valid authority, the court ruled that it would hold the jailer to a high standard of reasonableness since he exercises no discretion and is under relatively little time pressure. The court stated that

> If he negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable. But if the errors take place outside of his realm of responsibility, he cannot be found liable because he has acted reasonably and in good faith.

*Id.* at 1215.

■ Texas Civil Code Ann. art. 5116 imposes a nondelegable duty upon a sheriff to incarcerate in the jail of his county only those individuals committed to his custody "by lawful authority, subject to the order of the proper court." In *Bryan v. Jones,* Judge Brown noted in his concurring opinion that the Dallas County Jail, like the jails in other modern metropolitan areas, is a large facility with a daily jail population in excess of 1500 during the time defendant Jones was sheriff. *Bryan v. Jones,* 530 F.2d at 1215–16 (Brown, J., concurring). The large number of incarcerated persons about whom he must make decisions, while increasing his administrative burden, does not affect the scope of his narrow discretion to hold or release the individuals in his custody. We hold that to be entitled to qualified immunity from liability for false imprisonment under § 1983, Sheriff Jones and Deputy McCallum must present evidence of objective facts upon which they could have based a good faith, reasonable belief that they had the legal authority to continue to

hold Douthit once he had satisfied the sentence imposed upon him in case number 73–5457. The mere statement that they believed in good faith that their actions were lawful will not suffice to establish the defense; they must present objective evidence showing the reasonableness of that belief to warrant submission of the issue of their good faith to the jury.

At trial Sheriff Jones and Deputy McCallum testified that while they had no personal knowledge of Douthit's case, the only basis on which they would have continued to confine him after he had served the sentence imposed upon him in case number 73–5457 was a commitment order issued by the clerk of the Dallas County Criminal Court. Both defendants testified that a commitment order was the only means by which the sheriff's department could have learned of Douthit's default on the prior costs judgments in cases 68–2591–C and 71–85–C, since it was not the practice of the sheriff's office to attempt to ascertain the sentence imposed upon an individual in its custody by contacting the clerk's office directly, by checking the minutes of the trial court, or by obtaining possession of the court records on which the trial court entered the judgment and sentence rendered against a defendant. Although the defendant officials urged at oral argument that the entry of the costs judgments against Douthit on the court's records sufficed to authorize his incarceration, they cannot rely on that fact to establish their immunity in the absence of any contention or proof that they acted in reliance on such records on October 31, 1973, when they determined to continue Douthit's incarceration. Thus to establish their entitlement to qualified immunity, Jones and McCallum had to present evidence of objective facts warranting a good faith, reasonable belief on their part that on October 31, 1973, they had a valid commitment order authorizing Douthit's continued confinement.

■ The proof that the defendants presented to show the existence of such a commitment order consisted of the two commitments dated November 30, 1973, by the clerk of the Dallas County Criminal Court and records prepared by the Dallas County Jail about Douthit. The clerk of the Dallas County Criminal Court testified that the only documents contained in the court records authorizing Douthit's imprisonment during November, 1973, were the two commitment orders dated November 30, 1973. Both defendants suggested in their testimony that either the date entered by the clerk on the commitments was a typographical error and the commitments were in their possession prior to November 1, 1973, or another document authorizing Douthit's confinement had existed but was now missing from the clerk of court's files. The defendants also introduced "jail cards" prepared by the Dallas County Jail about Douthit, on which jail officials had recorded such information as a brief description of Douthit, the name of the arresting officer, the charge on which he was being held, the disposition of the charge, the dates on which he served his sentence, and an inventory of the items in his possession when he was admitted. Deputy McCallum noted that the jail card was dated October 19, 1973, the date on which Douthit was booked in, and testified that the information on the card concerning the unpaid costs owed by Douthit in the two prior misdemeanor cases could only have been obtained from a valid commitment and must have been entered on that date. This evidence is insufficient to justify submission of the qualified immunity issue to the jury.

The defendants cannot rely upon the two commitments to show that they reasonably believed in good faith that they had lawful authority to incarcerate Douthit. Regardless of whether the date of November 30, 1973, entered by the clerk of court on the commitments was a typographical error, the commitments did not form a facially valid foundation upon which Jones and McCallum could incarcerate Douthit for a period prior to that date. Assuming that a court clerk made an error in the date on the commitments, such an error would not constitute a mistake occurring outside the realm of the defendants' authority, so as to provide them with a good faith defense under the reason-

ing of *Bryan v. Jones,* since the error would have rendered the commitments facially invalid when they came into defendants' hands. Nor was the court warranted in submitting the immunity defense to the jury in the absence of any concrete evidence of a facially valid commitment. The defendants urged that they were entitled to go to the jury because the jail card established that a valid commitment must have been in their hands on October 31, 1973. Although dated October 19, 1973, the jail card contains information which was not available until after that date, such as the sentence imposed upon Douthit on October 23, 1973, when he pled guilty to the charge of driving without a license. Nothing on the card indicates when the sheriff's office added the information concerning the unpaid costs judgments. This evidence was simply too flimsy to warrant submission to the jury of the good faith, qualified immunity defense issue.

Although we reverse the judgment entered by the trial court in favor of Jones and McCallum for insufficient evidence, the interests of justice require a remand for a new trial rather than rendition of a verdict. *See* 28 U.S.C. § 2106. The extent and nature of the showing that the defendants had to make to be entitled to qualified immunity was unclear at the time of trial. Defendants should be allowed the opportunity to present any other evidence they may be able to obtain that would justify their belief that they had lawful authority to incarcerate Douthit.

### III. Good Faith as a Defense to a False Imprisonment Claim

The Texas courts, Douthit argues, have held that a jailer cannot avoid liability on a false imprisonment claim by showing that he acted in reasonable good faith. He urges that the district court committed reversible error by allowing the jury to consider the good faith of Sheriff Jones and Deputy McCallum as a defense to his common law false imprisonment claim. Noting the dynamic nature of common law tort principles, the defendants respond that the general trend among American jurisdictions has been to grant a qualified immunity from suit to executive officials. They submit that the Texas courts have not recently addressed the issue of the availability of a good faith defense to a jailer, and urge that if the Texas Supreme Court were presented with such an issue, it would follow the lead of the United States Supreme Court and of other state courts by granting a qualified immunity from liability for false imprisonment to a jailer who could demonstrate that he acted in reasonable good faith.

 The Texas courts have clearly held that to prevail against allegations that he falsely imprisoned an individual a sheriff or jailer must show that he acted under lawful authority. *Foust v. Ford,* 209 S.W.2d 941, 942 (Tex.Civ.App.1948); *Smith v. Burdett,* 114 S.W.2d 384, 385 (Tex.Civ.App.1938). Proof that the defendant sheriff acted in good faith, while relevant to the issue of whether the plaintiff can recover punitive damages, will not enable him to avoid liability under Texas common law for the unlawful imprisonment of an individual. *Whirl v. Kern,* 407 F.2d at 793–96; *Hall v. O'Malley,* 49 Tex. 70 (1878); *Newburn v. Durham,* 10 Tex.Civ.App. 655, 32 S.W. 112 (1895). Therefore, the district court erred in failing to instruct the jury on Douthit's common law false imprisonment claim and in granting judgment on that claim to Sheriff Jones and Deputy McCallum based upon the jury's finding that they had acted in good faith. Jones and McCallum could avoid liability only by showing that they had a lawful basis for incarcerating Douthit prior to his confinement, which, as our discussion in part II indicates, they failed to do.

### IV. Douthit's Other Allegations of Error

On this appeal Douthit also contends that the judgment rendered below must be reversed on the grounds that the jury was impaneled so as to exclude poor persons, blacks, and Mexicans; that the trial judge exhibited bias against him; that his appointed trial counsel were ineffective; that the defendants committed perjury and withheld material evidence; and that the trial judge improperly allowed the defend-

ants to introduce into evidence his past and present criminal record. Upon an examination of the record we conclude that with the exception of the introduction of Douthit's criminal record, these allegations are without merit.

■ Douthit did not challenge the makeup of the jury at trial, and nothing in the record supports his allegation that certain groups were excluded from the jury. He has failed to satisfy his burden of demonstrating that the process by which the jury was selected systematically and arbitrarily excluded a recognizable, distinct class, since he did not present any evidence showing that any group was "underrepresented on jury panels over a significant period of time" or that the process by which the jurors were selected was not racially neutral or was susceptible to being used as a tool of discrimination. *See Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 510 (1977); *United States v. Lopez,* 588 F.2d 450 (5th Cir.), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 319 (1979). The only specific allegation of improprieties occurring in the jury selection that Douthit makes is that the trial judge did not rule on his motion to exclude a potential juror who admitted to a bias in favor of the defendants. The record shows conclusively, however, that the suspect individual was not a member of the jury impaneled by the court.

■ Douthit's assertion of bias on the part of the trial judge does not constitute reversible error on two grounds. First, he neglected to file a "timely and sufficient affidavit" with the district court stating the basis of his belief that bias existed, as required by 28 U.S.C. § 144. Second, the actions of the district judge that Douthit alleges reflect his bias consist solely of judicial actions and do not indicate any personal bias on his part against Douthit. *See United States v. Archbold-Newball,* 554 F.2d 665, 681–82 (5th Cir.), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).

■ The record before us on this appeal belies Douthit's contention that he received ineffective assistance from his court-appointed trial counsel. While he asserts that his counsel failed to subpoena several witnesses or to obtain copies of certain documents, he does not indicate what information could have been obtained from such sources that was not available from the court records introduced by the parties at trial. When questioned before the district court at the end of the trial proceedings but prior to a verdict being rendered, Douthit stated that he knew of nothing that his counsel had failed to do which he wanted done, and that he was satisfied with their representation of him. The record reflects that Douthit received more than adequate representation from his counsel, who were well prepared, vigorously presented his claims, thoroughly questioned the witnesses, and made the necessary legal arguments.

■ Douthit's arguments that the defendant sheriff and deputy sheriff committed perjury and deliberately suppressed material evidence are equally without merit. Even if Deputy McCallum's testimony that the sheriff's office must have had a valid commitment order on November 1, 1973, might be characterized as implausible in light of the evidence presented, Douthit has not presented any evidence showing it to be perjurious. The failure of the defendants to produce two documents requested by Douthit during discovery might have justified a motion on his part seeking the court either to compel discovery or to impose sanctions upon the defendants under Fed.R. Civ.P. 37, but it does not constitute "deliberate suppression of evidence" and does not warrant reversal.

■ Finally, Douthit contends that the trial judge erred in failing to rule on his motion in limine seeking the exclusion of any reference to his past and present incarceration for crimes unrelated to his false imprisonment action. The defendants' attorney questioned Douthit about other unrelated convictions and periods of imprisonment and referred to him as a "criminal" and a "habitual criminal" in his closing argument. Although Douthit moved for a mistrial on the basis of the defendants'

reference to his current imprisonment on a life sentence, he did not object to the questions and statements concerning his other convictions and his pretrial motion in limine did not serve as a standing objection to any evidence of his convictions unrelated to this action. Had Douthit objected to this evidence, it would not have been admissible under Fed.R.Evid. 609(a), since the potential prejudicial impact of the other crimes proof clearly outweighs its minimal probative value. However, the trial court's failure to exclude this evidence on his own motion did not constitute plain error.

The judgment appealed from is vacated and the cause is remanded for a new trial of all issues.

VACATED AND REMANDED.