III So.2d 786

**STATE of Louisiana, for Use and Benefit of Mrs. Bessie L. SALES, individually, and as Natural Tutrix of the minors Ralph Frazier Sales and Johnny Wayne Sales,**

v.

**Clint RAY et al.**

No. 44087.

April 27, 1959.

Rehearing Denied June 1, 1959.

John R. Hunter, Jr., Alexandria, for plaintiffs-appellants.

Vincent Hazleton, Alexandria, for defendants-appellees.

HAMITER, Justice.

John D. Sales was killed in a motor vehicle collision near the City of Oakdale on March 13, 1954. Thereafter Dillard Cloud and Frank Singletary, because of their negligence which proximately cause the death, were condemned by the District Court of Allen Parish to pay to decedent's widow Mrs. Bessie L. Sales (for herself and her minor children) damages in the sum of $21,000.

The judgment was affirmed by the First Circuit Court of Appeal. See Sales v. Cloud, La.App., 88 So.2d 251. And on September 28, 1956, it became final by our denial of a writ of certiorari.

Meanwhile, specifically on July 21, 1954, or some four months after the collision, the Department of Public Safety of the State of Louisiana, acting pursuant to the Louisiana Motor Vehicle Safety Responsibility Act (enacted as No. 52 of 1952 and now contained in the Louisiana Revised Statutes as Title 32, Section 851 et sequentia) addressed a written notice to Dillard Cloud directing that, to assure payment of any judgments for damages resulting from the above mentioned accident, he furnish to such department (1) proof of the existence of an appropriate liability insurance policy, or (2) cash, certified check, bond of a suitable surety company, or negotiable securities, in the amount of $5,600, or (3) a notarized release executed by all persons injured and by those whose property was damaged. Attached to the notice was an order effecting a suspension as of August 6, 1954, of Cloud's licenses (operator and automobile) and registration certificates in the event he failed to comply with the mentioned directive by that date. Later (on August 10, 1954), however, the Department of Public Safety notified Cloud that his prior suspension had been withdrawn because of its having received from him (or on his behalf) a surety bond.

The surety bond so received bore date of August 7, 1954 and consisted of two pages, the first of which provided that the principal (Dillard Cloud) and the seven named individual sureties " * * * are held and firmly bound unto Department of Public

Safety, State of Louisiana (hereinafter called obligee), and the beneficiaries thereof under Act No. 52 of 1952 of Louisiana in the full and just sum of Five Thousand Six Hundred and no/100 Dollars ($5,600.00), lawful money of the United States, to the payment of which sum, well and truly to be made, the principal and surety bind themselves, their and each of their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents."

Also on such first page was the following recitation: "The condition of the foregoing obligation is such that: Whereas, the said principal was involved in an automobile accident under date of March 13, 1954, in Allen Parish, Louisiana, more specifically described as accident case No. A-14292. Therefore if said principal, Dillard Cloud, will satisfy any judgment or judgments of damages resulting from said accident, then said bond is to be null and void, otherwise to remain in full force and effect as security to satisfy any judgment or judgments for damages resulting from the accident * *."

The second page of the bond contained the signatures of the principal and sureties, as well as a sworn certificate of the Tax Assessor of the Parish of Rapides that the persons signing owned property in Rapides Parish valued at $10,850.

On January 16, 1957, no part of the above mentioned final judgment having been paid,

Mrs. Bessie L. Sales (the judgment creditor) instituted this suit on the described bond in the name of the State of Louisiana. She prayed for judgment in favor of the state for the benefit of herself, individually and as natural tutrix of her minor children, and against the bond's sureties in solido, for the sum of $5,600, together with legal interest from judicial demand and costs. She further prayed for recognition of a lien and privilege, on the real estate belonging to the defendants, which allegedly resulted from an inscription of such bond on the records of Rapides Parish.

The district court, after a trial of the merits, dismissed the suit. Also, it directed the Clerk of Court of Rapides Parish to cancel and erase the inscriptions of the bond and of a notice of lis pendens as they appear on the records of his office. This appeal by Mrs. Sales followed.

Of the two defenses urged in this court the primary one is that the bond, being purely statutory in nature, was illegal, null and void for the reason that it was not executed by an insurance or surety company as required by the last paragraph of subsection (c) of Section 5 of Title 3 of Act 52 of 1952.

The referred to statute is divided into six titles. However, only Title 3 is appropriate to this cause, it relating to and being entitled "Security Following Acci-

dent". Its Section 4 (the first section under such title and known also as LRS 32:871) requires that reports of certain accidents be made to the Commissioner—meaning (according to a definition in the statute) the Department of Public Safety of Louisiana. Section 5 (LRS 32:872) then provides:

"Security required unless evidence of insurance; when security determined; suspension; exception.

"(a) If 20 days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death, or damage to the property of any one person in excess of $100, the Commissioner does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under Subsection (b) of this Section has been released from liability, or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the Commissioner shall determine the amount of security which shall be sufficient in his judgment to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner.

"(b) The Commissioner shall, within 60 days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, * * * unless such operator or owner or both shall deposit security in the sum so determined by the Commissioner; * * *

"(c) This section shall not apply * * *

"1. to such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle in such accidents;

"2. to such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;

"3. to such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the Commissioner, covered by any other form of liability insurance policy or bond; nor

"4. to any person qualifying as a self-insurer under Section 34, or to any person operating a motor vehicle for such self-insurer..

"No such policy or bond shall be effective under this Section unless issued by an insurance company or surety company authorized to do business in the State of Louisiana, * * *."

Directing our attention to this last quoted language—"No such policy or bond shall be effective etc."—defendants contend, as stated above, that it means that the security required under subsection (b) of Section 5 (to avoid the suspension of licenses and registrations following an accident) must be either an insurance policy or a surety bond issued by a qualified company authorized to do business in this state. And their counsel argues that, therefore, the bond involved herein (it having been executed by only individual sureties) is without effect and is unenforceable.

■ The contention, in our opinion, is untenable. Subsection (b) of Section 5 provides for the depositing of "security" to prevent the suspension; it makes no reference to a "policy or bond". Only subsection (c) of Section 5, of which the language relied on by the defendants is a part, contains the words "policy or bond." And clearly the sole purpose of that entire subsection is to except from the effectiveness of the prior subsection (b) an operator or

owner who, at the time of the accident, had a suitable liability policy or bond (one issued by an insurance or surety company authorized to do business in Louisiana) or who was then qualified as a self-insurer under Section 34 of the statute. Hence, we conclude that the security required under subsection (b) of Section 5 may be a bond executed by individual sureties—such as that involved herein.

This conclusion, it may be pointed out, is fortified by a provision in Section 9 of the statute (contained also in Title 3) which reads: "The security required under this Title shall be in such form and in such amount as the commissioner may require * * *." Unquestionably this provision refers to the security required by subsection (b) of Section 5, and it grants to the Department of Public Safety authority to determine the nature or kind to be furnished.

■ Of course, it appears that in the initial notice to Dillard Cloud respecting the instant accident the department directed him to deposit cash, a certified check, negotiable security or a surety company bond; and that he forwarded, instead, a bond signed by individual sureties. However, such discrepancy is immaterial here, for the department accepted the bond thus furnished (it had authority to do this, as before shown) and, relying on it, withdrew the previous issued suspension order. This action served as a modification of the original directive.

■ The second and remaining defense advanced on this appeal is that these sureties executed the bond as the result of misrepresentation on the part of Dillard Cloud that it was merely to protect him "in keeping his driver's license until he could secure public liability insurance against any future losses that he might sustain"; that when signing they were presented only the second or signature sheet thereof and they did not see the first sheet which set forth the bond's terms and conditions; and that they would not have affixed their signatures to the instrument on which this suit is based had they known it was a bond guaranteeing payment of any judgment that might be obtained against Cloud as a result of the accident in question.

The detailed second defense, in view of the circumstances shown by the record, is also without merit. There is no evidence whatever connecting Mrs. Sales with the execution of the bond. Rather, it conclusively appears that she was not acquainted with (and prior to the trial of this case had never seen) any of the sureties; that at no time did she seek, either directly or indirectly, the furnishing of the bond; and that she was without knowledge of it until after the execution thereof. The defendants, on the other hand, knew of Cloud's accident and that he was in danger of losing his driver's license because of it. They knew also that, as a result of that accident in which a man had been killed, Cloud was required to furnish security to the Department of Public Safety; and that they, as sureties, were signing a bond of which he was the principal.

It may be true that the defendants, as they testified were shown only the second sheet of the bond and were misled by representations of Cloud that the sole purpose of the instrument was to protect the public against any other accidents involving him which might occur in the future. Nevertheless, they could and should have requested the privilege of reading the first sheet (it clearly set forth the bond's terms and conditions) or of having it read to them. This, admittedly, they did not do.

The following observation found in Snell v. Union Sawmill Company, 159 La. 604, 105 So. 728, 730, is applicable here: "If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. * * " See also Buxton v. McKendrick, 223 La. 62, 64 So.2d 844.

Earlier cases in our jurisprudence which announce a similar doctrine, as well as suggest that signatures to obligations are not mere ornaments, are Watson v. Planters' Bank of Tennessee, 22 La.Ann. 14; Boullt v. Sarpy, 30 La.Ann. 494; Allen, West & Bush v. Whetstone, 35 La.Ann. 846 and Prescott v. Cooper, 37 La.Ann. 553.

While we conclude that these defendants are solidarily liable on the instant bond, we are of the opinion that their immovable property is not affected by a lien resulting from the recording of that instrument. There is nothing in Title 3 (Security Following Accident) of Act 52 of 1952 that provides for the creation of such a lien. Accordingly, the judgment of the district court will be affirmed insofar as it ordered that the inscriptions of the bond and notice of lis pendens be cancelled.

For the reasons assigned the judgment of the district court is affirmed insofar as it directed cancellation from the records of Rapides Parish of the inscriptions of the involved bond and notice of lis pendens. Otherwise, it is reversed and set aside, and there is now judgment herein in favor of plaintiff, State of Louisiana, for the use and benefit of Mrs. Bessie L. Sales, individually and as natural tutrix of the minors, Ralph Frazier Sales and Johnny Wayne Sales, and against the defendants, Clint Ray, Ranell Ray, Ward Cloud, Hiram Doyle, Mrs. Viola C. Stone, Executrix of the Estate of John Walter Stone, Jim Thompson and Vallery Doyle, in solido, in the full sum of $5,6000, together with legal interest thereon from date of judicial demand until paid. All costs shall be paid by the defendants.

SIMON, J., recused.