**Neola N. HOWARD, etc., et al.,**
**Plaintiffs-Appellants,**

v.

**Ray FORTENBERRY, etc., et al.,**
**Defendants-Appellees.**

No. 83–4207.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1984.

Rehearings Denied March 29, 1984.

Raymond L. Cannon, Tallulah, La., for plaintiffs-appellants.

Charles E. Welsh, Asst. Atty. Gen., Shreveport, La., for Gov. Treen, Director of Corrections and HHR.

Voelker, Ragland, Brackin & Crigler, William B. Ragland, Jr., Lake Providence, La., for East Carroll Parish Police Jury & Members Thereof.

Mayer, Smith & Roberts, Paul R. Mayer, Shreveport, La., for Hartford Fire Ins. Co.

Cook, Yancey, King & Galloway, Hershel E. Richard, Jr., Shreveport, La., for Aetna Casualty & Surety Co.

Before RUBIN and RANDALL, Circuit Judges, and MITCHELL *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

By summary judgment, the parochial governing body and various state officials were absolved by the district court of liability for the violation of the constitutional rights of two youthful inmates of a prison farm who died while confined in an isolation cell. We affirm the judgment dismissing most of the officials sued. Concluding, however, that there were disputed facts material to the liability of one of the executive officials and the two inspectors known as sanitarians, we reverse the summary judgment as to them and remand for further proceedings.

I.

Randy Moore and Leroy Harrison, inmates at the East Carroll Parish Prison Farm, returned to the prison from a weekend visit home in August of 1980, apparently under the influence of drugs. After they failed to respond to questioning by Ray Fortenberry, the Prison Superintendent, about what drugs they had taken, if any, Fortenberry ordered guards to put Moore and Harrison in an isolation cell, accurately described in the prison parlance as a "hot box," until they were ready to provide him with information.[1] The cell, one of two at the prison, was a metal structure six feet tall, five feet long, and four-and-one-half feet wide. It contained no furniture, no toilet facilities other than a urinal, no ventilation other than two pipes through the top, and bore the words, "Keep Out, Rough Inside," above the door. The cell also had a sliding door through which bread and water could be passed.

Moore and Harrison were together placed inside a single cell sometime after 9 p.m. They were given bread and water the following morning.[2] At about 9:30 the next morning a prison guard "checked on" them and reported that they were "not hurting" and "not ready to talk." About midday an inmate trustee brought more bread and water and attempted to pass them through

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. The plaintiffs have not raised any procedural due process claim premised on Fortenberry's failure to provide them with notice and a hearing before administering summary punishment. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Their complaint simply alleges a denial of due process and in their briefs they make no argument about procedural denial.

2. The bread and water were apparently passed through the sliding door, although the depositions do not make this clear.

a panel in the metal door, but, when the trustee spoke to the inmates, there was no response. After the trustee reported the inmates' condition to Fortenberry, Moore and Harrison were removed from the cell in a semi-conscious state and a doctor was called. Minutes before he arrived, the two men died. It was later estimated that the temperature inside the cell was then about 108 degrees. Their death was attributed to heat stroke and acute circulatory collapse.

The parents and other successors of Moore and Harrison brought this suit against various state and local officials, a number of whom settled with the plaintiffs. The remaining defendants (referred to hereafter only as the defendants) are the East Carroll Parish Police Jury, the Governor of the State of Louisiana, the Director of the Department of Corrections, the Secretary of the Department of Health and Human Resources, and that Department's local and regional sanitarians. The plaintiffs also contend that their settlement with the Prison Farm officials did not effect a release of the officials' sureties. The district court dismissed the claims against the Governor and the Police Jury and entered summary judgment in favor of the sureties and the state corrections and health officials. We affirm the judgments in favor of all defendants except the Director of the Department of Corrections and the two sanitarians. Finding that a disputed question of material fact remains as to the liability of the Director for pendent state claims and of the sanitarians for all claims made

against them, we remand for further proceedings.

## II.

The plaintiffs' claims are based on 42 U.S.C. § 1983, alleging violation of Moore's and Harrison's due process and eighth amendment rights. None of the defendants was directly responsible for the deaths. Because liability under § 1983 cannot be premised on vicarious liability or respondeat superior,[3] no defendant can be held liable unless it is shown that he breached some duty imposed by state law, and that the breach had some causal connection with the constitutional deprivation.[4] The confinement of Moore and Harrison in an environment that was severely, indeed fatally, detrimental to their health clearly deprived them of their liberty and, ultimately, their lives.[5] The parties' argument, therefore, focuses primarily on whether the various defendants had a "duty" to safeguard Moore and Harrison from such a deprivation.[6]

## III.

Under Louisiana law, the primary responsibility for the administration of local jails and prisons rests with local authorities. The police jury is charged with the responsibility of "provid[ing] . . . a good and sufficient jail."[7] The police jury is also responsible for "the physical maintenance of all parish jails and prisons."[8] Day-to-day administration, however, is the province of the

3. *See Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

4. *Sims v. Adams*, 537 F.2d 829 (5th Cir.1976); *Roberts v. Williams*, 456 F.2d 819 (5th Cir. 1971), *cert. denied sub nom., Roberts v. Smith*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971).

5. *See Adams v. Mathis*, 458 F.Supp. 302, 308 (M.D.Ala.1978), *aff'd* 614 F.2d 42 (5th Cir. 1980).

6. No particular state of mind is required to state a cause of action under § 1983 for violation of fourteenth amendment rights; negli-

gence will suffice. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1981). The defendants do not argue that *Parratt* defeats the plaintiffs' claims for deprivations of life and liberty because of the existence of an adequate post-deprivation remedy. *Cf. McCoy v. Gordon*, 709 F.2d 1060, 1062 (5th Cir.1983) (claim of intentional deprivation of property states cause of action under § 1983 even if adequate state remedies exist); *Brewer v. Blackwell*, 692 F.2d 387 (5th Cir.1982) (*Parratt* does not apply to intentional deprivations of liberty).

7. La.Rev.Stat.Ann. § 33:4715 (West 1966).

8. *Id.* § 15:702 (West 1981).

sheriff[9] or, if the parish has elected to create a prison district as a separate political unit, of the board of governors of the prison district.[10] East Carroll Parish is one of a few Louisiana parishes that has created such a district. The board of governors of the prison district is composed of the president of the police jury and two other police jurors appointed by the police jury as a whole.[11]

When a sheriff is in charge of a parish jail, he is responsible for such matters as the training of personnel and the safety and medical care of inmates.[12] In a prison district, the board of governors has those responsibilities. Certain state officials also have statutory responsibilities in connection with local jails and prisons. The Director of the Department of Corrections and the State Health Officer must establish standards of health and decency for all correctional facilities in the state, and the State Health Officer or his representative must periodically inspect those institutions to determine whether they are in compliance with the standards.[13] In addition, the Director of the Department of Corrections must "[m]ake an annual report to the governor ... which shall include ... the results of inspections of local detention and correctional facilities and statistical and other data on persons detained in such facilities."[14] We discuss the claims against each defendant separately.

### A. The Police Jury

The East Carroll Parish Police Jury, as a local government body, may be held liable under § 1983 for a constitutional deprivation only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611, 636–638 (1978). The threshold question, however, is whether the Police Jury breached any duty it owed to Moore and Harrison. The answer to that question turns in part on the system of governance of the East Carroll Parish Prison Farm. In 1930, the Police Jury, acting pursuant to a 1928 statute, created Prison District Number One of the Sixth Judicial District. The Prison District then constructed the prison and a board of governors assumed responsibility for the prison's management. Because the individuals who served on both the Police Jury and the Board of Governors have settled with the plaintiffs for any liability incurred in their capacity as members of the Board of Governors, this appeal contests only the liability of the Police Jury as a governmental entity.

■ The plaintiffs have filed no affidavit, deposition, or other evidentiary material tending to show that the Police Jury knew of or had adopted any custom or practice of permitting use of the hot box or that any police· juror, except the three who were also members of the Board of Governors, even knew of its existence. These three came by that knowledge in their capacity as prison district governors, and their knowledge cannot be imputed to the rest of the Police Jury. If they had any duty to report the existence of the cell to the other police jurors, that duty attached to their individual roles as governors and the Police Jury cannot be held liable for its breach.

■ The plaintiffs argue that the Police Jury breached its statutory duties to ap-

---

9. "Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders." *Id.* § 15:704.

10. *Id.* § 15:803. *See generally id.* § 15:804.

11. *Id.* § 15:804(C).

12. *Wood v. Maryland Casualty Co.,* 322 F.Supp. 436 (W.D.La.1971) (suit under § 1983 for injuries sustained by prisoner in attack by fellow inmate). *See also Amiss v. Dumas,* 411 So.2d 1137 (La.App.1982) (general statutory scheme regarding parish jails provides that police jury is responsible for expenses and sheriff for administration).

13. La.Rev.Stat.Ann. § 15:751.

14. *Id.* § 15:827(2).

prove construction of the cell [15] and to "maintain" that part of the prison.[16] Neither of these statutory duties could be triggered, however, without either some knowledge of the cell's existence or some independent duty to inspect the prison. A duty to maintain does not per se impose a duty to seek out defective conditions. The duty to approve construction does not extend to a duty to inquire as to whether any new structures have been built. We need not decide whether, if the Police Jury had not appointed a board of governors to administer the prison, it would have had an independent duty to inspect. If a sheriff had been in charge of the prison, he, not the Police Jury, would bear the responsibility under Louisiana law for such matters as inspection.[17] While a sheriff, an elected official, obviously would be more independent of the Police Jury than the Board of Governors, whose members are appointed by the Police Jury, the statutory scheme creating an intermediate prison authority appears to be designed to relieve a police jury of prison administrative responsibilities, including any duty to inspect prison facilities.

The plaintiffs have also argued that the Police Jury is strictly liable under article 2317 of the Louisiana Civil Code, because it had an unreasonably dangerous thing (the cell) under its "supervision, care or guardianship." *See Jones v. City of Baton Rouge,* 388 So.2d 737 (La.1980). Because this claim was not raised below, we decline to address it.[18] Such abstention is particularly appropriate when the newly raised argument is premised on an apparently unsettled question of state law.[19]

B. *The Governor of the State of Louisiana*

■ The Governor's only statutory duty in connection with local jails and prisons is to receive reports of the inspections conducted by the Department of Corrections and the Department of Health and Human Resources.[20] The plaintiffs allege that this duty carries an implicit obligation to confer with the Department concerning the reports, and that, if the Governor had done this, he would have seen that only the kitchen and barracks at the East Carroll Parish Prison Farm had been inspected. Presumably, he would then have ordered that the sanitarians inspect any isolation cells that might exist. The sanitarians, in turn, would have ordered the prison to discontinue using the cells because they did not meet state standards of health and decency. This is the type of "but-for-cause" argument that is essential, but not sufficient, to establish legal causation. The duty to re-

---

15. La.Rev.Stat.Ann. § 15:805(4) (West 1981) provides: "The board of governors . . . [m]ay build, *with the approval of the governing authorities of the parishes composing the multiparish prison area,* jails or other places of imprisonment on the property of the multiparish prison whenever they deem it advisable." (Emphasis added.) Although this provision applies by its terms to multiparish prison districts, and East Carroll Parish Prison Farm is operated by a single-parish prison district, we may assume without deciding that it applies to all prison districts administered by a board of governors. There is apparently no rigid division between the provisions that apply to multi-parish districts and those that apply to single-parish districts; the only statute that provides for the creation of a board of governors falls under the part of Title 15 that is labeled "Multiparish Prisons." La.Rev.Stat.Ann. § 15:804(c) (West 1981).

In addition to the specific duties at issue in this case, the Police Jury is also required to appoint a physician for the prison and to appropriate annually an amount sufficient to cover prison expenses. *Id.* §§ 15:703, 15:806 (West 1981).

16. *See supra* text accompanying note 8.

17. *See supra* note 12.

18. *Commercial Standard Insurance Co. v. Bryce Street Apartments, Ltd.,* 703 F.2d 904, 908 (5th Cir.1983); *Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir. Unit B), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

19. *Compare Jones v. City of Baton Rouge,* 388 So.2d 737 (La.1980) (city and parish strictly liable for defective catch-basin cover) *with Hall v. City of New Orleans,* 400 So.2d 265 (La.App. 1981) (cracked drain cover was in care or custody of sewerage and water board rather than city).

20. La.Rev.Stat.Ann. §§ 15:751, 15:827(2) (West 1981).

ceive reports does not imply a duty to act on them. The argument is the legal equivalent of the saw, "for want of a nail the battle was lost." The chain of causation is entirely too speculative to establish the Governor's liability under § 1983. The claim against the Governor was therefore properly dismissed.

### C. ·Director of the Department of Corrections

■ The Director of the Department of Corrections has a statutory duty to "make an annual report to the governor . . . which shall include . . . the results of inspections of local detention and correctional facilities." La.Rev.Stat.Ann. § 15:827(2). Although Phelps, the Director, visited the Prison Farm once in 1974 or 1975, neither he nor anyone else from the Department has ever "inspected" the prison. The district court found that "there is no duty included in this statute which requires the Department of Corrections to regularly inspect parish prison facilities." We find, however, that this provision implies that the Director has a duty to perform such inspections, or to delegate that task to subordinates.[21] But the Director apparently has no authority to remedy any deficiencies he might observe, beyond reporting them to the Governor.[22] There is no evidence from which the district court could have deduced a causal connection between the Director's

failure to report a condition in the prison to the Governor and the failure of the prison Board of Governors to change that condition. We hold, therefore, that the Director's dereliction, if any, did not have a sufficient causal connection to the constitutional deprivation to establish liability under § 1983.

■ The plaintiffs also allege that the Director breached his duty to supervise the actions of Prison Farm officials. The district court judge was correct in holding that state law imposes no such duty; the Director is required to "supervise the administration of all institutions . . . *under the jurisdiction of the department*,"[23] and the East Carroll Parish Prison Farm is in the jurisdiction of another governmental agency, its Board of Governors.

■ The plaintiffs argue that, apart from any state-imposed duty to supervise, state corrections officials have "a duty mandated by the Fourteenth Amendment to the Constitution of the United States to ensure that those persons incarcerated by virtue of its laws in [local jails] are not deprived of their constitutional rights." *Adams v. Mathis,* 458 F.Supp. 302 (M.D.Ala. 1978), *aff'd* 614 F.2d 42 (5th Cir.1980).[24] *Adams v. Mathis,* however, was decided in the context of a state correctional scheme markedly different from the one that obtains in Louisiana. The Alabama Board of

---

**21.** Another possible reading is that the provision merely requires the Director to report the results of inspections conducted by someone else, *e.g.,* another department. This interpretation has not been urged on us, however, and we find it the less logical alternative.

**22.** In contrast, the sanitarians from the Department of Health and Human Resources apparently have the authority to order the discontinuation of any Sanitary Code violations they uncover; they stated that they would have barred further use of the hot box, had they inspected it. *See also* La.Rev.Stat.Ann. § 15:763 (West 1981) (state health officer shall institute proceedings to enjoin parish governing authority from using prisons that do not meet state standards of health and decency).

**23.** La.Rev.Stat.Ann. § 15:823 (West 1981) (emphasis added).

**24.** In *Adams v. Mathis,* the district court, *per* Judge Frank Johnson, held:

The appropriate state officials have the duty of supervising the acts of its agents who are authorized by state law to operate a jail in one of its political subdivisions. This constitutional duty to supervise includes three basic elements: To clearly and specifically define the scope of the authority delegated through the promulgation of detailed rules and regulations; to keep informed as to the conduct of the agents through regular and thorough inspections; and to take all action necessary to correct the conduct of the agents operating the jails in the political subdivisions, through vigorous enforcement of the established standards and through direct assistance.

458 F.Supp. at 309. *See also McMurry v. Phelps,* 533 F.Supp. 742 (W.D.La.1982).

Corrections, a defendant in *Adams,* had extensive duties under state law pertaining to the administration of local jails, including the explicit duty to "manage, supervise and control all penal and correctional institutions," except as specifically provided by law.[25] As we have noted, no analogous duties are imposed by Louisiana law upon the Director of the Department of Corrections, and the approach of *Adams* is therefore inapposite. The federal constitution does not of its own force impose a duty on any particular state official to supervise local jails.[26] No affidavit, deposition, or other evidentiary material has been offered, and no statute or regulation has been cited, to indicate that the Director of the Department of Corrections had any duty to supervise the employees of the East Carroll Parish Prison Farm under either state or federal law. The federal claim against him was therefore properly dismissed.

### D. *The Secretary of the Department of Health and Human Resources*

"[T]he state health officer or his duly authorized representative" has a statutory duty to inspect "all correctional institutions." La.Rev.Stat.Ann. § 15:751 (West 1981). The State Health Officer may, of course, discharge this duty by delegating it to subordinates, such as the regional and parish sanitarians who inspected the East Carroll Parish Prison Farm. He may, however, have a duty to properly train and supervise those subordinates and it is possible that this duty, if it exists, was breached in this case.

 The plaintiffs, however, chose not to sue the State Health Officer. The plaintiffs' counsel stated at oral argument that the State Health Officer was not named as a defendant because no order, rule, or regulation issued by the State Health Officer may take effect until it is approved and signed by the Secretary of the Department. *See* La.Rev.Stat.Ann. § 40:2 (West Supp. 1982). But the plaintiffs have pointed to no order, rule, or regulation issued by the State Health Officer that the Secretary refused to approve and sign. Nor have the plaintiffs offered any evidence that the Secretary himself is charged with a duty to train and supervise the Department's prison inspectors. We therefore uphold the district court's dismissal of the claims against him.

### E. *The Regional and Parish Sanitarians*

 Unlike the Police Jury and the other defendant-officials, the regional and parish sanitarians have an explicit statutorily-imposed duty to inspect the Prison Farm. La.Rev.Stat.Ann. § 15:751 (West 1981). These sanitarians performed regular inspections, the regional sanitarian quarterly and the parish sanitarian ten times a year. The sanitarians claim that they never saw the isolation cells, and that they could not have known about the existence of these facilities unless Fortenberry or some other Prison Farm official told them the cells existed. The plaintiffs, however, contend, relying on Fortenberry's deposition, that the cells were "out in open view" and had "been out in the open since 1976." If the plaintiffs are correct, the sanitarians may have been negligent in failing to notice and inspect the cells. Both sanitarians stated in their depositions that, if they had seen and inspected the cells, they would have forbidden their use immediately; their failure to inspect thus has a clear causal connection to the deaths of Moore and Harrison. The obvi-

---

**25.** Ala.Code § 14–1–8 (1975) (amended 1979 to vest powers in governor); *see also id.* §§ 14–6–81 (Board of Corrections shall inspect local jails in localities with populations of 10,000 or more and shall require good sanitary conditions), 14–6–82 (Board may order governing body of such jails to correct unsatisfactory sanitary conditions and may order erection of new buildings), 14–6–83 (Board has power to condemn such local jails when warranted by unsanitary or unsafe conditions).

**26.** To impose such a duty would be inconsistent with the jurisprudence regarding constitutional torts. *See, e.g., Monell v. Department of Social Services,* 436 U.S. 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 374, 96 S.Ct. 598, 606, 46 L.Ed.2d 561, 571 (1976).

ousness or nonobviousness of the cells and the alleged lack of care in making inspections are "genuine issue[s] as to [a] material fact," precluding summary judgment. Fed. R.Civ.P. 56.[27] We therefore remand for further proceedings.

The district court also held that the sanitarians had no duty to inquire about the existence of isolation cells at the prison. The sanitarians assert that the Department's regulations did not require them to inspect isolation cells. The district court, acting under this assumption, held "[t]here is no requirement in the Louisiana statutes or the Sanitary Code for DHHR inspection officials ... to search a jail facility and seek out inadequate isolation cells." The sanitarians' depositions indicate that they never made any such inquiries at the prison; their understanding was that the regulations required them to seek out and inspect only the kitchen, dormitory, and sewage system.

Chapter XV of the State Sanitary Code, however, includes at least two provisions relating specifically to "disciplinary cells," one requiring "handwashing lavatories" and the other requiring "toilet facilities." La. San.Code §§ 15.50.3, 15.50.4. Other provisions apply to "all cells," and presumably would apply to places of solitary confinement. In the light of the apparently then-existing regulations governing standards of solitary confinement, the district court should reconsider its holding.

■ The district court may also be required on remand to decide whether the sanitarians are entitled to claim good-faith immunity from damages for any acts for which they may be found liable. Plaintiffs argue that the defendants may not avail themselves of a claim of good-faith immunity if the particular duties at issue were "statutory and mandatory" rather than dis-

cretionary. The inquiry, however, is not whether the specific duties violated were "discretionary," but whether the defendant's actions were taken "within the scope of his discretionary authority." *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981). *See also Douthit v. Jones,* 619 F.2d 527, 534 (5th Cir.1980). The requisite showing varies with the position of the defendant. An official who has limited discretion to act, such as a police officer or a jailer, bears the burden of demonstrating "objective circumstances which would compel the conclusion" that his actions were taken within his discretionary authority to act. *Barker,* 651 F.2d at 1121. An official with much broader discretion, such as a prison administrator, need show only "that he acted within the scope of his discretionary authority." *Douthit,* 619 F.2d at 534. This variation is consistent with the policies underlying § 1983, ensuring that "the threat of liability will not deter an executive official from exercising his discretion and performing his official duties." *Id.* Because the immunity question may be pretermitted by a finding of nonliability, we do not discuss it in detail. The breadth of a sanitarian's discretion is a question for the district court to resolve on remand, if necessary.

■ If the sanitarians establish that they are entitled to assert the defense, the burden will shift to the plaintiffs to demonstrate that the sanitarians did not act in good faith.[28] Under the Supreme Court's most recent exposition of the good-faith defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [29]

---

**27.** The fact that both parties have moved for summary judgment does not preclude our finding that a disputed question of material fact remains. *See, e.g., Bricklayers, Masons and Plasterers International Union of America, Local Union No. 15 v. Stuart Plastering Co.,* 512 F.2d 1017 (5th Cir.1975); *Pioneer National Title Insurance Co. v. American Casualty Co.,*

459 F.2d 963 (5th Cir.1972); *see also* 6 J. Moore, Federal Practice ¶ 56.–13 (1983).

**28.** *Douthit,* 619 F.2d at 534.

**29.** *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 409 (1982); *see also Stokes v. Delcambre,* 710 F.2d 1120,

## F. Pendent State-Law Claims

The plaintiffs have also asserted pendent state-law claims, premised on negligence, against four of the defendant state officials.[30] We have held that any breach of a state-imposed duty by the Director of the Department of Corrections was too remote in the chain of causation to establish his liability under § 1983 for the deaths of Moore and Harrison; the plaintiffs argue that, under state law, the violation of a statutory duty is not rendered remote as the cause of an injury by the intervention of another agency if the occurrence of the accident, in the manner in which it happened, was the very thing which the statute was designed to prevent. We have found that the two sanitarians may have breached state-imposed duties and may be liable to the plaintiffs for damages under § 1983. Because the facts are not sufficiently developed to warrant summary judgment on the pendent state-law claims against these three defendants, we remand them to the district court.

### IV.

The remaining issue is whether the plaintiffs' settlement with Fortenberry and the other Prison Farm officials released the sureties on their statutory bonds from liability for the deaths of Moore and Harrison. The surety bond itself stated that the principals and sureties would be bound "jointly and severally." This language imposes the same liability that is created by a civil law obligation due *"in solido."*[31] The statute pursuant to which the bond was issued does not, however, provide for solidary liability. "Statutory bonds are strictly construed in

accordance with the statutory requirements. Any language in the bond tending to expand liability beyond that provided by law will be disregarded." *Boudreaux v. Puckett,* 433 F.Supp. 650, 652 (E.D.La.1977), *modified,* 611 F.2d 1033 (5th Cir.1980); *see also Mayeaux v. Lamco, Inc.,* 180 So.2d 425, 428 (La.App.1965). Although neither of these cases specifically discusses solidary liability, they point to the conclusion that the parties cannot agree to create such liability on the basis of a statutory bond when the statute itself does not so provide.[32]

### V.

Under Louisiana law, the claim of Randy Moore's mother would be barred because Moore is survived by an acknowledged child. *See* La.Civ.Code art. 2315. The plaintiffs argue that federal rather than state law should determine who may bring a wrongful death action under § 1983. Because this becomes an issue only if liability is found to exist and may not, therefore, arise on remand, we decline to address it now.

### VI.

Accordingly, we AFFIRM the judgment dismissing the action against the Police Jury, the Governor, and the Secretary of the Department of Health and Human Resources. We REVERSE the dismissals of the claims against the other defendants and REMAND the state-law claim against the Director of the Department of Corrections for a determination of whether he had a state-imposed duty to inspect the Prison Farm; if so, whether the duty was breached; and, if the duty was breached, whether

1125–26 (5th Cir.1983); *Trejo v. Perez,* 693 F.2d 482, 484–85 (5th Cir.1982).

**30.** The Director of the Department of Corrections, the Secretary of the Department of Health and Human Resources, and the two sanitarians.

**31.** *Johnson v. Jones-Journet,* 320 So.2d 533 (La. 1975).

**32.** *State v. Ray,* 237 La. 599, 111 So.2d 786 (1959) held that a surety bond issued pursuant to a state statute imported solidary liability between *sureties,* but the issue in this case is one of solidary liability between a *principal* and a surety. In *Coating Specialists, Inc. v. Pat Caffey Contractor, Inc.,* 194 So.2d 380 (La.App. 1967) the court found solidary liability between a principal and a surety, but the relevant statute apparently allowed for such liability, stating that the surety on a public works claim is bound "with an additional obligation for the payment by the contractor or subcontractor for all work done." La.Rev.Stat.Ann. § 38:2241 (West 1968 & Supp.1982).

he is liable to the plaintiffs under state law, regardless of the remoteness of the breach in the chain of causation leading to the plaintiffs' injury. We also remand both the state and federal claims against the regional and parish sanitarians. On remand, the district court should determine whether the sanitarians had a duty to inspect the isolation cells at the prison; if so, whether they were negligent in failing to notice and inspect the cells; and whether they had a duty to inquire as to the existence of any such cells. If liability as to any of these defendants is established under state law, the district court should determine whether state law provides them with an immunity from damages. If the sanitarians are found liable under § 1983, the district court should determine whether they are shielded by good-faith immunity from damages under federal law.