**Ralph CRAINE, Plaintiff-Appellant,**

v.

**Lamar ALEXANDER, et al.,
Defendants-Appellees.**

**No. 84–4320.**

United States Court of Appeals,
Fifth Circuit.

March 25, 1985.

Gordon, Forrester & Whitaker, J. Houston Gordon, Michael W. Whitaker, Covington, Tenn., for plaintiff-appellant.

Warren & Jones, Peggy A. Jones, James W. Warren, Jr., Crutcher, Spencer & Brown, William C. Spencer, Holly Springs, Miss., Christian T. Goeldner, Southaven, Miss., Alan R. Strain, Memphis, Tenn., for defendants-appellees.

Before JOHNSON and HILL, Circuit Judges, and BOYLE,[*] District Judge.

ROBERT MADDEN HILL, Circuit Judge: [**]

Pursuant to 42 U.S.C. § 1983, Ralph Craine sought damages for battery from Marshall County, Mississippi, the Sheriff and certain deputies of Marshall County, as well as the Board of Supervisors of the Marshall County Jail. Craine also sought damages under the Antipeonage Act for subjection to "peonage." *See* 42 U.S.C. § 1994. After being awarded damages on the § 1983 claim only, Craine appealed. Before us are issues of § 1983 responsibility of supervisory personnel, the adequacy of the damages awarded Craine, and the scope of the Antipeonage Act. We affirm the district court's rulings on all three issues.

I.

In August 1981, Craine, a 21-year old black male, was convicted of burglary and sentenced to incarceration for three years in the Mississippi Department of Corrections. However, at the time of the events pertinent to this appeal, Craine was confined at the Marshall County Jail in Holly Springs, Mississippi, instead of at the Parchman facility. During his confinement at the jail, Craine often worked outside the jail at various tasks including cutting and hauling wood for a state investigator, hauling cattle under the supervision of a state game warden, washing cars and other odd jobs. Craine was occasionally paid for his work although the sums were insignificant. Craine was permitted outside the confines of the jail only in his status as a trustee.

On January 23, 1982, Craine worked outside the jail most of the day on sundry chores. He returned to the jail, but left again. Later that evening Craine was being escorted back to the jail from a pool hall by Chief Deputy Lanny Cummings, Deputy Bobby Barksdale and three city police officers. Cummings was armed with a sawed-off shotgun. Experiencing some difficulty in getting Craine to return to the jail, Cummings struck Craine several times with the shotgun. Craine shouted back at Cummings. The other officers forced Craine to the ground to handcuff him, one of the police officers complaining to Cummings that some of the blows were missing their mark and landing on the officers. Cummings apologized to the officer but swung the shotgun at Craine again. When it struck Craine in the stomach, the shotgun went off, inflicting a serious wound in the area of the abdomen and side.

Craine underwent surgery on the wound. He sustained nerve loss in his left thigh resulting in permanent, untreatable muscle atrophy. His immediate medical expenses amounted to $10,714.28.

Craine filed this action against Cummings, Osborne Bell, the Sheriff of Marshall County, the members of the Marshall County Jail Board of Supervisors in their individual and official capacities (the

---

[*] District Judge of the Eastern District of Louisiana, sitting by Designation.

[**] Some of the numerous issues raised on appeal do not have precedential value. Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that non-precedential portions of this opinion should not be published. The place at which the published opinion omits part of the unpublished opinion is indicated by footnote references.

Board), the county itself, and others. In this appeal we are concerned only with the claims against Cummings, Sheriff Bell and the Board.

Craine received a jury trial. At the close of his evidence, the district court directed verdicts in favor of the Board on the § 1983 claim and in favor of all defendants on the peonage claim. At the close of all the evidence, the court directed a verdict against Cummings on liability for the § 1983 claim. The jury awarded Craine $10,714.28 as actual damages and $70,000 as punitive damages against Cummings but found in favor of Sheriff Bell.

## II.

The district court directed a verdict in favor of the Marshall County Board of Supervisors. We must reverse if, viewing all the evidence in the light most favorable to Craine, reasonable jurors might reach different conclusions. *Reeves v. City of Jackson,* 608 F.2d 644, 648 (5th Cir.1979) (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc)).

Before the Board can be held liable under § 1983, Craine must show that it breached some duty owed to him that is imposed by state law. *Howard v. Fortenberry,* 723 F.2d 1206, 1209 (5th Cir.) (citing *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir.1976)), *vacated in part,* 728 F.2d 712

(1984). This inquiry precedes—and a negative answer to it compels us to pretermit discussion of—the question whether there was a breach that had some causal connection with the constitutional deprivation, that is, whether, under *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), "execution of a government's policy or custom [has] inflict[ed] the injury." *See Howard v. Fortenberry,* 723 F.2d at 1210. Thus, Craine argues that the Board's duty to him had two alternative sources: the statutory scheme of Mississippi and the established custom of the Board itself.

■ Craine argues, first, that certain Mississippi statutes give the Board authority and responsibility over the sheriff's department and the jail. At most, however, those statutes, which are set forth in the note,[1] merely impose upon the Board a duty to inspect the jail itself and give it power to rectify abuses discovered in the inspections. Craine does not argue that the Board breached its duty to inspect the jail itself. In any event, the duty to inspect the jail for unsafe conditions did not impose a duty to protect prisoners from abuse by prison personnel. *Cf. Howard v. Fortenberry,* 723 F.2d at 1211. Moreover, it avails Craine nothing to rely on *Penick v. Columbus Board of Education,* 519 F.Supp. 925 (D.C.Ohio), *aff'd,* 663 F.2d 24

---

1. Craine bases his argument on Miss.Code Ann. §§ 19-5-1, 19-3-51 and 19-25-13. They provide, in part, as follows:

 At least once in every three months, and as often as it may think proper, the board of supervisors shall examine into the state and condition of the jail, in regard to its safety, sufficiency, and accommodation of the prisoners, and from time to time take such legal measures as may best tend to secure the prisoners against escape, sickness, and infection, and have the jail cleansed. If it shall appear from such examination that the sheriff has neglected his duty in the manner of keeping the jail, or keeping and furnishing the prisoners, the board shall fine him, as for a contempt, in any sum not exceeding one hundred dollars.
 Miss.Code Ann. § 19-5-1 (1972).

 The board of supervisors shall have power to subpoena witnesses in all matters coming under its jurisdiction and to fine and imprison

 any person for a contempt committed while they are in session, the fine not to exceed fifty dollars, and the imprisonment not to exceed beyond the continuance of the term. The person so fined or imprisoned may appeal to the circuit court, as in other cases, from the order or judgment of the board, and such appeal shall operate as a supersedeas.
 *Id.* § 19-3-51.

 The sheriff shall, at the July meeting of the board of supervisors, submit a budget of estimated expenses of his office for the ensuing fiscal year beginning October 1 in such form as shall be prescribed by the director of the state department of audit. The board shall examine this proposed budget and determine the amount to be expended by the sheriff in the performance of his duties for the fiscal year and may increase or reduce said amount as it deems necessary and proper.
 Miss.Code Ann. § 19-25-13 (1984 Supp.).

(6th Cir.1981), *cert. denied sub nom., Ohio State Board of Education v. Reed,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982), in which it was clear that the defendant Ohio Board of Education had neglected its "primary statutory duty, *in first the instance,* to investigate the existence of segregation in the public schools, to ascertain its causes and to use its powers to eradicate it." *Id.* at 27 (emphasis in original). No such breach of duty was either alleged or proved by Craine. Craine has completely failed to articulate any other specific duty arising from these Mississippi statutes that might have even remotely caused him injury.

Craine relies more heavily on his allegation that the Board was responsible for his injury because it had adopted a "custom or usage" of preventing the abuse of prisoners by maintaining direct control over the acts of individual members of the sheriff's department. He apparently suggests that breach of this custom-derived duty caused his injury. Craine attempts to demonstrate the existence of this duty on the strength of three isolated instances of Board action: a hearing, during the tenure of Sheriff Bell's predecessor, on jail abuses; the withholding of funds from the sheriff's budget as a disciplinary measure connected with the hearing; and the withholding of the salary of a former chief deputy until he completed the eight-week law enforcement curriculum of the Mississippi Law Enforcement Officer's Academy pursuant to Miss.Code Ann. § 19–25–21 (1972).

Before Craine's theory can proceed, however, he must show that this custom carried the force of state law; that is, the duty he wishes to enforce must be "imposed by" state law. *Howard v. Fortenberry,* 723 F.2d at 1209; *see also, Sims v. Adams,* 537 F.2d at 832 (duty of supervisory personnel may arise from city charter). Assuming the viability of his legal theory, Craine adduced insufficient evidence to entitle him to have it submitted to the jury. In effect, there was evidence of only one instance of Board action regarding jail abuses and only one instance of Board action regarding dep-

uty training. Under any definition of custom or usage, this evidence would be insufficient to raise a jury issue as to the existence of a custom having the force of a duty imposed by state law.

Craine could not seriously argue that two isolated instances of Board action constituted a "settled State [or County] practice" or "[d]eeply embedded traditional ways of carrying out state policy." *Nashville C. & St. L.R. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 S.Ct. 1254 (1940) (Frankfurter, J.) (equal protection analysis). Nor could he reasonably assert that they embodied "[a] persistent, widespread practice ... [that] is so common and well settled as to constitute a custom." *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc) (definition of "official policy" as used in *Monell* ). While these definitions of custom were articulated in different contexts, we think they are sufficient to reveal the want of merit in Craine's theory.

Further, Craine's argument betrays a misunderstanding of the principles of § 1983 liability as applied to "local governmental units." *See Monell,* 436 U.S. at 690, nn. 54, 55, 98 S.Ct. at 2034, nn. 54, 55. The custom-derived duty Craine attempts to establish could not form the premise for imposing liability on the Board. Indeed, proof of the benevolent custom Craine claims existed would have effectively undermined liability under *Monell* which requires that "the action that is alleged to be unconstitutional implements or executes a policy statement" or "custom." *Id.* at 690–91, 98 S.Ct. at 2035–36. Here Craine himself argues, not that Cummings was *executing* the Board's malevolent policy but, rather, that he was *violating* the Board's policy of protecting prisoners from abuse. His own argument contradicts the essential causal link he is required to establish.

The district court directed a verdict in favor of the Board on the ground that Mississippi law imposed upon the sheriff, not the Board, the duty of protecting prisoners from abuse. *See, e.g.,* Miss.Code Ann. § 19–25–69. Whether or not this is a

completely accurate understanding of Mississippi law, the sources to which Craine has directed our attention fail to establish the imposition of any such duty on the Board. Accordingly, the district court's dismissal of the claims against the Board is affirmed.

### III.[2,3]

### IV.[4-6]

### V.

■ In 1867 Congress passed the Anti-peonage Act, which prohibits the holding of individuals to forced servitude. Act of March 2, 1867, c. 187, 14 Stat. 546. The first part of the statute provides:

> The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.

42 U.S.C. § 1994.[7] Craine contends that the evidence presented issues for the jury concerning whether his § 1994 rights were violated thus entitling him to damages under § 1983. Assuming that § 1994 provides a federal right that may be vindicated in a damages action pursuant to § 1983,[8] we hold that no reasonable jury could have found that any "acts, laws, resolutions, orders, regulations, or usages of [Mississippi]", or even of Marshall County, caused Craine to be subjected to labor as a peon. Consequently, the district court properly directed a verdict on Craine's peonage claim.

Section 1994 renders invalid only the "acts, laws, resolutions, orders, regulations or usages" of the states that establish or enforce labor as a peon. Craine cites no act, law, resolution, order or regulation of the state of Mississippi as being the source of the alleged peonage. Neither did Craine adduce sufficient evidence that there exists a usage or custom of the state of Mississippi or of Marshall County of subjecting prisoners to labor as peons. While there is some evidence in the record of isolated instances of Craine's having worked outside the confines of the jail at the behest and under the control of various individuals without official positions in the county jail system, it was clearly not a widespread practice engaged in with the knowledge or acquiescence of Marshall County officials; much less, with the knowledge and acquiescence of Mississippi state officials. No abuses at the Marshall County Jail of which Craine complains were the result of any "usage" of Marshall County or of the state of Mississippi. Thus, the evidence did not require submission of Craine's peonage claim to the jury. We therefore express no opinion whether the abuses complained of constituted subjection to "peonage" for purposes of § 1994.

■ Our conclusion that plaintiffs proceeding under § 1994 must show some state responsibility for the abuse complained of, is buttressed by the Supreme Court's language in *Pollock v. Williams,* 322 U.S. 4, 5, 64 S.Ct. 792, 793, 88 L.Ed. 1095 (1944). There the Court, in overturning a Florida statute that made it a misdemeanor to induce salary advances by a promise to perform labor, wrote:

> Forced labor in some special circumstances may be consistent with the general basic system of free labor. For example, forced labor has been sustained as a means of punishing crime.... But in

**2, 3.** See footnote **, ante.

**4–6.** See footnote **, ante.

**7.** The second part of the statute, which makes it an offense for any person to hold, arrest or

return another to the condition of peonage, is now codified in 18 U.S.C. § 1581.

**8.** *See Whitner v. Davis,* 410 F.2d 24, 30 (9th Cir.1969) (assumed that district court had jurisdiction to grant relief under § 1994).

general the defense against oppressive hours, pay, working conditions or treatment is the right to change employers. When the master can compel and the laborer cannot escape the obligation to go on, there is no power below to redress and no incentive above to relieve a harsh overlordship or unwholesome conditions of work.... Whatever of social value there may be, and of course it is great, in enforcing contracts and collections of debts, Congress has put it beyond debate that no indebtedness warrants a suspension of the right to be free from compulsory service. This congressional policy means that no state can make the quitting of work any component of a crime, or make criminal sanctions available for holding unwilling persons in labor.

*Id.* at 17–18, 64 S.Ct. at 799. This Congressional policy, even outside the context of a state criminal statute, would have little application unless it is the *state* that is enforcing peonage, whether directly or indirectly, as opposed to an individual. Craine has produced no evidence of governmental enforcement of the abuses of which he complains.

Craine asks us to construe § 1994 broadly so as to give him a right of action for damages under § 1983 "without consideration of the perpetrator." He presents us with no convincing plea why we should ignore what Congress chose to make essential. In defining this right as it did, Congress did not choose to abolish usages or customs of individuals that might be likened to conditions of peonage. The remedy for such individual acts lies in the criminal sanction of 18 U.S.C. § 1581 against holding another to a condition of peonage.[9] Additionally, § 1983 is not a source of substantive federal rights but a remedy provided for their vindication. *See, e.g., Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). We decline to

expand the scope of the § 1994 right in direct contravention of legislative expression. The evidence adduced by Craine did not establish a deprivation of any right created by the language of § 1994.

Craine does not complain of the labor imposed upon him as an aspect of the corrective regimen to which he was subject; nor could he do so with any hope of success. *See Draper v. Rhay,* 315 F.2d 193, 197 (9th Cir.), *cert. denied,* 375 U.S. 915, 84 S.Ct. 214, 11 L.Ed.2d 153 (1963) (prisoner sought damages under the 13th amendment on ground that he could not "be forced to perform *any* labor in the penitentiary." Held, no such federally protected right); *United States v. Dowd,* 271 F.2d 292, 294–95 (7th Cir.1959) (13th amendment does not prohibit involuntary servitude "as a punishment for crime."). Therefore we express no opinion on the more difficult question whether a prisoner can establish a § 1994 deprivation by virtue of labor forced upon him by a custom or usage of the state that is, at the same time, outside the scope of a corrective penal regimen. *Compare Draper v. Rhay,* 315 F.2d at 197; *with Jobson v. Henne,* 355 F.2d 129, 132 (2d Cir.1966) (inmate of state school for mentally retarded stated § 1983 cause of action under 13th amendment by alleging unconstitutional amount and conditions of mandatory work program inside state school) *and Santiago v. City of Philadelphia,* 435 F.Supp. 136, 156–57 (E.D.Pa. 1977) (juveniles confined in detention center stated claim under § 1983 for deprivation of § 1994 and 13th amendment rights based on compulsory work program). Moreover, we do not reach the issue of whether Craine established a violation of his rights under the Thirteenth Amendment since this issue was not raised in his complaint. The district court was correct in directing a verdict on Craine's peonage claim.

---

**9.** Section 1581(a) provides:

Whoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning

him to a condition of peonage, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

## VI.[10]

For the foregoing reasons the judgment of the district court is AFFIRMED.